IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ranae Jeffcoat,                 :

                                :

                Petitioner    :

                                :

         v.                :  No. 491 C.D. 2024

                                :  Submitted: March 4, 2025

City of Philadelphia        :

(Workers' Compensation    :

Appeal Board),           :

                                :

             Respondent :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE MATTHEW S. WOLF, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED: March 28, 2025


       Ranae Jeffcoat (Claimant) petitions for review from an April 5, 2024 decision and order of the Workers' Compensation Appeal Board (Board), affirming a decision and order of a Workers' Compensation Judge (WCJ). The WCJ's decision and order denied Claimant's petitions for reinstatement of workers' compensation benefits (Reinstatement Petition) and for penalties (Penalty Petition) (collectively, Petitions) against the City of Philadelphia (Employer or City) pursuant to the Workers' Compensation Act (Act).[1] For the reasons that follow, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1; 2501-2710.

## Background

Claimant was employed by Employer as a police officer. On November 5, 2020, Claimant was notified that she tested positive for COVID-19 (COVID). WCJ's Decision, Finding of Fact (F.F.) No. 1(b). She notified her supervisors, Inspector David Merrick and Sergeant Mary McKenny, of her diagnosis. Claimant advised Sergeant McKenny that Claimant knew she "got [COVID] from work." *Id.*, F.F. No. 1(c). Claimant's supervisors indicated that she would receive full salary as "E-time." *Id.* In January of 2022, Claimant and other employees receiving E-time were advised that as of March 5, 2022, their E-time benefits would cease and that if they did not return to work, they "would have to take sick or vacation time." *Id.*, F.F. No. 1(e). Employer stopped paying Claimant's E-time on March 5, 2022, and Claimant was ultimately forced to use her accrued sick and vacation time to receive a paycheck and have health insurance. *Id.* Claimant had not been released by any of her treating physicians to return to work as a police officer. *Id.* On January 28, 2022, Employer issued Claimant a Notice of Compensation Denial (NCD). *Id.*

On March 2, 2022, Claimant filed the Petitions, alleging that Employer "unilaterally terminated benefits in January 2022 after accepting the claim for C[OVID] with payment of wages in lieu of benefits as a matter of law." C.R. at Nos. 2, 3. The matter proceeded before the WCJ.

## Claimant's Evidence

Claimant testified on her own behalf at a deposition held on May 5, 2022.[2] At the time, she was 59 years old and had worked for Employer as a police officer for 29 years. Before the onset of Claimant's COVID diagnosis, she was

---

[2] Claimant's deposition can be found in the Certified Record at Item No. 16.

working as backup reinforcement during demonstrations in the City. While performing these duties, she was transported with other officers in cramped buses or vans. WCJ's Decision, F.F. No. 1(a)-(b), (g). Claimant then testified concerning her diagnosis and contact with her supervisors.

Claimant related that she was hospitalized on November 8, 2020, and was in critical condition due to COVID. At one point she was near death. At the time of her testimony, Claimant was considered a COVID "long[-]hauler." WCJ's Decision, F.F. No. 1(d). She continued to see specialists for breathing issues, fatigue, severe headaches, body aches, and brain fog. For the first time in her life, Claimant was on oxygen and was also taking three different blood pressure medications. She had been referred to a cardiologist due to concerns with her heart. Claimant had not returned to work since November 2, 2020. *Id.*

On cross-examination, Claimant admitted she knew the difference between injured on duty (IOD) benefits and E-time. She further admitted she did not seek IOD benefits or question her supervisors about it because she was receiving a full salary prior to March 5, 2022. WCJ's Decision, F.F. No. 1(g).

On October 25, 2022, Claimant testified at a videoconference hearing before the WCJ. At that time, she was 60 years old and continued to suffer from the same long-haul COVID symptoms. In addition to those symptoms, Claimant related that she was also suffering from Post Traumatic Stress Disorder and was in therapy. Claimant testified that she would be retiring in November 2022 because she was running out of sick and vacation leave. WCJ's Decision, F.F. No. 2(a)-(b).

3

**Employer's Evidence**

In its defense, Employer offered the August 15, 2022 deposition testimony of Barry Scott, its Deputy Finance Director for Risk Management (Risk Management) and its Risk Manager (Mr. Scott) and the August 25, 2022 deposition testimony of Lieutenant Donald Lowenthal, the Philadelphia Police Department's (Department) Infection Control Officer (Lieutenant Lowenthal).[3]

Mr. Scott testified that he has served in his position since 2003. Risk Management administers several different types of disability benefits to Department police officers, including workers' compensation, Heart and Lung benefits,[4] and benefits pursuant to Act 17.[5] When Department police officers believe they have sustained a work injury, they report the injury to their supervisor and the supervisor fills out a COPA II form.[6] From there, the supervisor and the Department's third-party administrator, PMA Management Corporation (PMA), investigate the alleged injury, and PMA determines if the claim is compensable. In turn, PMA notifies the employee whether their claim has been accepted or denied and what, if any, benefit they are to receive.

---

[3] Mr. Scott's deposition can be found in the Certified Record at No. 20. Lieutenant Lowenthal's deposition can be found in the Certified Record at No. 21.

[4] The Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*. 53 P.S. §§637-638, provides public safety officers with their full salary while they recover from temporary, work-related ailments.

[5] Act of April 29, 2020, P.L. 118, No. 17, 35 Pa.C.S. §§57a01-02. Act 17 provides that a person who is eligible for Heart and Lung Act benefits who is temporarily incapacitated from performing his or her duties following a COVID diagnosis may receive up to 60 days of Heart and Lung Act benefits.

[6] "COPA II" is shorthand for "City of Philadelphia Accident, Injury, Illness Form." *See* Deposition of Barry Scott at 7.

Following a stay-at-home order issued by the Employer, on March 23, 2020, Risk Management, along with other members of City government, began "addressing how to protect City workers from contracting COVID as well as ways to minimize the spread in the community as it impacted City operations." Deposition of Barry Scott at 10. Mr. Scott related that in the early days of COVID, Risk Management did not have a written policy for police officers who believed that they contracted COVID at work. Furthermore, Mr. Scott testified, at no time throughout the pandemic was there a Risk Management written position that precluded police officers from making claims if they believed they contracted COVID at work.

With regard to E-time, Mr. Scott then explained that "E[-]time, or excused time, is a timekeeping tool that - - which enables an employee to continue to receive their salary when they can't or they're not at work for whatever reason." Deposition of Barry Scott at 12. To Mr. Scott's knowledge, employees on E-time historically continued to receive their regular salary and accrue benefits and did not deplete their personal leave time. From Risk Management's perspective if a police officer received E-time because of COVID, it was not an acknowledgment that he or she had contracted COVID at work; rather

> [i]t was meant to signify that the City was not trying to punish these officers and that it was -- so that they were not losing anything by being in this status, that this was, you know, a situation we were not expecting but we were looking to have a situation where, you know, folks who succumbed to this condition were not -- weren't financially penalized by the condition.

*Id.* at 13. Mr. Scott emphasized that E-time was not sick leave or personal time off but was a "sort of administrative timekeeping category." *Id.* at 14. Mr. Scott confirmed that if a police officer filled out a COPA II form and the investigation determined that he or she did contract COVID at work, they would not be put on E-

5

time but would be placed on a disability benefit under the employee disability program.

Mr. Scott testified that in January 2022, Employer became aware that several Department police officers who claimed disability due to long-haul COVID were still out of work and receiving E-time. Employer decided to transition the officers from E-time to Act 17 benefits. Mr. Scott indicated that once their Act 17 benefits ceased, the officers would have to use their accrued sick time if they did not return to work. It was after this change that many of these officers filed for workers' compensation benefits although they had not previously sought disability benefits from Employer related to their COVID diagnoses.

On cross-examination, Mr. Scott acknowledged that he is not a Department employee and that Risk Management "provides direction to departments across the City in order to minimize the risk to City employees from hazards on the job," but it does not have "a managerial authority to control the actions taken in a particular department." Deposition of Barry Scott at 21. Mr. Scott further acknowledged that in 2020 and 2021, Risk Management was not actively involved in contact tracing "which might have identified cases in the Department." *Id.* at 25. Finally, Mr. Scott indicated that he was never advised that Department supervisors were telling officers that they could only receive E-time for COVID and that COPA II forms were unnecessary.

For his part, Lieutenant Lowenthal testified that he had been serving as the Department's Infection Control Officer since 2007. He explained that prior to March 2020, he was involved in coordinating care and testing of police officers who had bodily fluid exposures. In March 2020 the nature of his position changed from handling bodily fluid exposures to "nothing but C[OVID]." Deposition of

6

Lieutenant Donald Lowenthal at 10. Lieutenant Lowenthal described various COVID policies implemented by Employer beginning in March 2020. While Lieutenant Lowenthal did not write the policies, he did interpret them and answer questions. Lieutenant Lowenthal indicated that when asked by Department supervisors how to report an employee who was out with COVID on the Daily Activity Report, he indicated that the policies provided that those employees should be listed as being on E-time, regardless of whether the COVID was work-related or non-work-related. Further, he related that if a Department supervisor asked him whether they should fill out a COPA II form for an officer who claimed to have contracted COVID from work, he would advise the supervisor to do so. Lieutenant Lowenthal acknowledged that the first time a Department policy indicated that a COPA II form should be completed when an officer believed he or she contracted COVID at work was in July 2022.

**WCJ's Decision**

Based on her review of the record, the WCJ denied Claimant's Petitions. The WCJ found Claimant's testimony to be generally credible "but not dispositive of the issues presented in this matter." WCJ's Decision, F.F. No. 8. The WCJ emphasized that Claimant acknowledged she was familiar with Employer's various IOD programs and that she understood the E-time she received was different from IOD benefits. *Id.*

The WCJ also found Mr. Scott and Lieutenant Lowenthal's testimony to be credible. With regard to Mr. Scott, the WCJ wrote:

> E-time was available to all City employees, without consideration of where or how the virus was contracted. Mr. Scott credibly testified that E-time was a timekeeping

7

tool that allows an employee to receive a salary when unable to work and it does not deplete that employee's personal leave time while absent from work. Use of E-time for work missed due to C[OVID] was not intended to replace workers' compensation benefits and was not an acknowledgement of a work-related C[OVID] diagnosis.

WCJ's Decision, F.F. No. 9.

The WCJ rejected Claimant's argument that Employer was estopped from disavowing Claimant's workers' compensation benefits based upon the salary continuation that she received pursuant to E-time, finding:

Here, Claimant has failed to prove that she received wages in lieu of compensation. In support of this determination, this Judge notes that it is the intent of the payments by Employer, not merely Claimant's receipt of them, that is determinative. The evidence supports that E-time was never intended to compensate an employee for a work-related injury. Rather, it was a system and timekeeping measure designed to compensate employees affected by the unprecedented circumstances presented by the C[OVID] pandemic. Employees directly affected by C[OVID] . . . were treated in the same manner without respect to how or where they were exposed to the virus. In addition, the employees receiving E-time controlled their own medical treatment and were not required to treat with providers designated by Employer. All of these factors distinguish Claimant's payment of E-time from any program used by Employer to acknowledge work-related injuries.

WCJ's Decision, F.F. No. 11.

As for Claimant's Penalty Petition, the WCJ determined that Employer did not violate the Act "by its change in Claimant's pay status from E-time to Act 17 benefits to sick time, and the issuing of the [NCD]." WCJ's Decision, F.F. No. 13.

8

Claimant appealed and the Board affirmed. Claimant now appeals to this Court.[7]

**Discussion**

On appeal, Claimant argues that the E-time payments she received were made in lieu of compensation for her work-related COVID, that Employer's payment of E-time was an admission of liability, and that Employer's payment of E-time benefits estopped it from denying liability under the Act. Claimant further argues that the WCJ erred in denying her Penalty Petition because Employer accepted liability for a work-related injury, and Employer violated the Act by unilaterally terminating payments for her work-related injury. In the recent case of *Brown v. City of Philadelphia (Workers' Compensation Appeal Board)*, 330 A.3d 12 (Pa. Cmwlth. 2025), this Court performed an exhaustive analysis of the identical issues raised here, and issued a well-reasoned opinion affirming the Board. *See also Clarke v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 508 C.D. 2024, filed January 17, 2025); *Tymes v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 464 C.D. 2024, filed January 29, 2025).[8] For the reasons set forth in *Brown, Clarke*, and *Tymes*, we

---

[7] This Court's review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

[8] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

conclude there was no error of law or abuse of discretion in denying Claimant's Petitions.

Accordingly, the order of the Board is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Dumas did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ranae Jeffcoat,                                  :
                                                 :
                          Petitioner             :
                                                 :
            v.                                   : No. 491 C.D. 2024
                                                 :
City of Philadelphia                             :
(Workers' Compensation                           :
Appeal Board),                                   :
                                                 :
                          Respondent             :


# **O R D E R**


AND NOW, this 28th day of March, 2025, the April 5, 2024 order of the Workers' Compensation Appeal Board is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge